[Crim. No. 39914. Second Dist., Div. Four. Feb. 17, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES LEWIS STEWART, Defendant and Appellant.

COUNSEL

Edward B. Mills for Defendant and Appellant.

George Deukmejian and John K. Van de Kamp, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Gary R. Hahn and Frederick Grab, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WOODS, P. J.**—James Stewart appeals the judgment entered after a jury trial in which he was found guilty of two counts of receiving stolen property. (Pen. Code, § 496.) Before trial the court denied appellant's Penal Code section 995 motion to set aside the indictment for lack of probable cause, his Penal Code

section 1538.5 motion to quash the search warrant, and an Evidence Code section 402 motion to exclude evidence of prior felonies for impeachment.

Appellant challenges the denial of the Penal Code section 1538.5 motion and the Evidence Code section 402 motion and alleges sentencing error.

I

Appellant contends that the trial court improperly denied his motion under Penal Code section 1538.5 to quash a search warrant.

Appellant's premises were searched pursuant to warrant on February 15, 1980. Appellant's motion to suppress the evidence challenged the sufficiency of the affidavit which supported the warrant. ▮ On appeal, he argues that as a matter of law the affidavit was insufficient to support the magistrate's finding of probable cause to search appellant's premises; and that the informant's information used in the affidavit did not meet the reliability test of *Aguilar* v. *Texas* (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509].

The affidavit stated the following: Detective Layton of the Los Angeles County Sheriff's Department had been investigating the January 7, 1980, theft of $27,800 worth of Texas Instruments computers and calculators which had been taken from ICX Corporation, a trucking terminal in Compton. On January 10, 1980, Detective Layton arrested Michael Robinson for an unrelated offense. Robinson was known to Detective Layton and other officers as a thief who specialized in fancy cars. After his arrest, Robinson told Detective Layton that James Stewart and another man had done the ICX burglary. Robinson helped them unload and store the contraband in the front room and garage of Stewart's home. "Robinson knew the approximate location of the Burglary, the date, that entry was made thru the chain link fence, that several trailers had been broken into, that the stolen merchandise was Texas Instruments calculatros [*sic*] and computers, and that the stolen merchandise was loaded into another ICX Corp. Bobtail which was used to transport the stolen merchandise from the location."

Robinson also told Detective Layton that a 1978 Corvette had been stolen at 223d Street about two months earlier and that the stripped vehicle was in Stewart's garage. This theft was corroborated in the stolen vehicle log. Robinson was correct as to the description of the car, and the approximate date and location of the theft.

Robinson called James Stewart from the police station and Detective Layton talked to him to set up a buy of the Texas Instruments merchandise. Later that day, Detective Layton observed Robinson enter Stewart's house empty-handed

and return with two Texas Instruments calculators marked with the numbers 50-79 and 51-79. The shipping supervisor at Texas Instruments told Detective Layton that the numbers indicated they were likely to have come from the stolen lots. Robinson said there were six computer terminals and approximately one thousand calculators still in Stewart's house and garage.

Two days before the warrant was issued, Robinson said he had been in Stewart's house again and had seen the calculators, the computers and the Corvette engine.

Detective Layton was told by Detective Herpin of the Compton Auto Theft Detail that he had known Robinson for several years and that he had proven himself to be a reliable informant by assisting in several cases in the past.

These facts alone demonstrate the reliability of Robinson's information and support the magistrate's finding of probable cause. ■ The *Aguilar* rule has been applied in California to mean "that for an affidavit based on an informant's hearsay statement to be legally sufficient to support the issuance of a search warrant, two requirements must be met: (1) the affidavit must allege the informant's statement in language that is factual rather than conclusionary and must establish that the informant spoke with personal knowledge of the matters contained in such statement; and (2) the affidavit must contain some underlying factual information from which the magistrate issuing the warrant can reasonably conclude that the informant was credible or his information reliable. [Citations.]" *(People* v. *Hamilton* (1969) 71 Cal.2d 176, 179-180 [77 Cal.Rptr. 785, 454 P.2d 681].)

It is indisputable that Robinson spoke factually and with personal knowledge. He claimed to have assisted in unloading the merchandise. ■ Statements which are against the speaker's penal interest are inherently reliable. *(Skelton* v. *Superior Court* (1969) 1 Cal.3d 144, 154, fn. 7 [81 Cal.Rptr. 613, 460 P.2d 485].) ■ Robinson had been a reliable informant in the past. More importantly, his knowledge of the precise details of the ICX burglary and the theft of the Corvette justified the magistrate's finding that his information was reliable.

## II

■ Appellant contends that the court improperly authorized the prosecution to use a prior felony conviction for impeachment purposes, as a result of which appellant did not testify in his defense.

Before the jury was impaneled, the prosecution requested the court to allow impeachment of the appellant with a prior felony conviction, if he took the stand. There was some discussion as to whether the felony had been reduced to

a misdemeanor; ruling was deferred until this had been determined. Originally, the district attorney thought the prior felony was receiving stolen property. Later he determined that it was grand theft, for which there had been a dismissal pursuant to Penal Code section 1203.4. The court noted that section 1203.4 does not eliminate the use of the prior for impeachment. The defense attorney then said, "I don't have any other comments."

The court ruled that if the appellant took the stand, a 1973 prior felony conviction could be used to impeach him. The appellant did not testify. He argues on appeal that the court treated the matter summarily by not balancing the factors required by *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1]. Counsel did not make a *Beagle* objection at trial. In fact, his only objection to the use of the prior felony as impeachment was his contention that the felony had been reduced to a misdemeanor.

In the *Beagle* case, there was no objection at trial to the use of the prior. The court found "[s]uch omission . . . understandable in light of the appellate decisions [prior to *Beagle*]" which held that impeachment with prior felony convictions was mandatory. (*People* v. *Beagle, supra,* 6 Cal.3d at p. 454.)

However, it is clear from the language in cases following *Beagle* that an objection at trial is necessary to preserve a *Beagle* issue for appeal. In *People* v. *Rollo* (1977) 20 Cal.3d 109, 116 [141 Cal.Rptr. 177, 569 P.2d 771], the Supreme Court observed: "By now it should be clear to all that *when a defendant makes a timely objection* to the introduction of evidence of a prior felony conviction for the purpose of impeaching his testimony, the trial court is under a duty (1) to determine the probative value of that evidence . . . ." (Italics added.)

Again, in *People* v. *Woodard* (1979) 23 Cal.3d 329, 334-335 [152 Cal.Rptr. 536, 590 P.2d 391], the court said: "In *People* v. *Beagle* . . . this court unanimously held that although Evidence Code section 788 authorizes the admission of prior felony convictions to impeach the credibility of a witness, a trial court must, *when requested,* exercise its discretion under [Evidence Code] section 352 . . . ." (Italics added; fns. omitted.)

Such language by the California Supreme Court makes it clear that failure to object to the use of a prior felony conviction to impeach is subject to the general rule that such failure waives the defect and the evidence admitted is not subject to review on appeal. (Evid. Code, § 353; *People* v. *Williams* (1970) 11 Cal. App.3d 970, 979 [90 Cal.Rptr. 292]; *People* v. *Rodriguez* (1971) 15 Cal. App.3d 481, 485 [93 Cal.Rptr. 182].)

## III

■ Appellant argues that the court committed reversible error in imposing the high term for the conviction on count I.

The appellant was sentenced to the high term of three years for count I. A consecutive sentence of one-third of the midterm—eight months—was imposed for count II. Total imprisonment was three years and eight months.

The court gave its reasons for imposing the high term as follows: (1) the crime was of some sophistication; (2) it involved a taking of great monetary value; (3) there were multiple victims; (4) the appellant indicates a pattern of conscious disregard of law and is a serious danger to society; (5) an increase in the seriousness of appellant's crimes from his youth to the present; and (6) appellant shows a lack of remorse or sense of responsibility for his conduct.

Appellant focuses on three of these factors as error. He argues that there is no showing of a taking of great monetary value. It can be inferred from the facts that the items recovered, as opposed to the items burgled, do not support a finding of great monetary value.[1] The appellant was convicted of receiving stolen property, not of burglary. This factor alone, however, even if true, would not support a finding of reversible error.

Appellant also argues that the crime was not one of sophistication, because the appellant was so easily caught. It is clear that by sophistication the court was referring to a scheme of disposing of large amounts of technological equipment; it was not meant to connote infallibility as well.

Finally, appellant asserts that there were not multiple victims as to count I, because ICX was a victim of the burglary only—none of its property was shown to have been received by appellant. We do not discuss this contention, because it is well settled that one aggravating factor is sufficient justification for the imposition of the upper term when there are no mitigating factors. (*People* v. *Kellett* (1982) 134 Cal.App.3d 949, 963 [185 Cal.Rptr. 1]; *People* v. *Burney* (1981) 115 Cal.App.3d 497, 505 [171 Cal.Rptr. 329].)

The court's findings that appellant had been engaged in a pattern of conscious disregard of law; that he posed a serious danger to society; showed a lack of

---

[1] It is true that the items recovered from 1408 North Spring Street were not the great number of calculators and computers Robinson claimed to have been there four days before the search. In pertinent part, Detective Layton's inventory contains three calculators, one empty box labeled "Dataman" made by Texas Instruments, three "Speak and Spell" calculators, one empty box for a Texas Instruments Home Computer Console, five "business card model" Texas Instruments calculators, and the Corvette engine.

remorse and no sense of responsibility; and that his criminal activity manifested an increase in seriousness are uncontroverted here, and justify the imposition of the upper term.

The judgment entered below is affirmed.

Kingsley, J., and McClosky, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 4, 1983.