Tonya UPTAIN, Petitioner,

v.

HUNTINGTON LAB, INC., Respondent.

No. 84SC136.

Supreme Court of Colorado,
En Banc.

Aug. 25, 1986.

Alan E. Johnson, Durango, for petitioner.

Hamilton, Shand & McLachlan, P.C., Michael E. McLachlan, Durango, for respondent.

KIRSHBAUM, Justice.

We granted certiorari to review the Court of Appeals' decision in *Uptain v. Huntington Lab, Inc.*, 685 P.2d 218 (Colo. App.1984), which decision affirmed a jury verdict in favor of the defendant, Huntington Lab, Inc. (Huntington), in a products liability case filed by the plaintiff, Tonya Uptain. We affirm the judgment of the Court of Appeals, but in so doing we affirm the trial court on grounds that differ from those relied upon by the Court of Appeals.

On September 5, 1979, the plaintiff began a new job as an employee in the housekeeping department of Southwest Memorial Hospital in Cortez, Colorado. On that day, her supervisor demonstrated the use of various cleaning compounds available for cleaning bathroom fixtures, including Sani-Tate, a twenty-three percent hydrochloric acid solution manufactured by Huntington. At that time, Sani-Tate containers had labels warning users to avoid contact with the product because of poten-

tial chemical burns and to wash the skin area well if such contact occurred.

The tasks to be performed by the plaintiff required use of a swab to apply Sani-Tate and periodic rinsing of the swab. At trial, the plaintiff testified that her supervisor neither wore gloves nor instructed the plaintiff to use gloves when using Sani-Tate. The supervisor testified at trial that she instructed the plaintiff to wear rubber gloves and that the plaintiff refused to do so.

After the demonstration, the plaintiff began cleaning bathrooms on her own. Although she initially followed the supervisor's instructions, by September 7, 1979, the plaintiff had become so annoyed at the fact that water dripped continuously from the cleaning swab that she began to wring the swab out by hand after each rinse. The plaintiff's hand became red and blistered, however, and after washing it with soap and water the plaintiff reported to her supervisor. The supervisor told her to put on a rubber glove and continue to work. The plaintiff complied, but when her hand continued to hurt she removed the glove. Her hand appeared severely burned, and the plaintiff sought medical attention at once. The plaintiff subsequently had numerous skin graft operations, and her hand is permanently scarred.

The plaintiff filed a products liability action against Huntington, alleging that inadequate warnings on the Sani-Tate bottle rendered it a defective product. Huntington answered, claiming that the warning was adequate, that the plaintiff's failure to read and heed the printed warnings constituted a misuse of the product, and that the plaintiff assumed the risk. A jury returned a verdict in favor of Huntington, and the Court of Appeals affirmed. We accepted certiorari on the following issues: (1) whether the Court of Appeals' definition of "misuse" is correct; (2) whether section 13–21–404, 6 C.R.S. (1985 Supp.), applies to new labeling not based on scientific advancement; and (3) whether a contemporaneous objection to proffered evidence is necessary to preserve the issue of the ad-

missibility of the evidence when the precise issue had been previously determined by the trial court in a ruling on a motion in limine.

I

The plaintiff first argues that the definition of "misuse" adopted by the Court of Appeals in affirming the trial court's instruction to the jury defining Huntington's misuse defense is too broad. We agree, but conclude that the instruction itself was not erroneous.

The plaintiff argued to the Court of Appeals that the trial court erred in instructing the jury on Huntington's defense of misuse because the plaintiff had used Sani-Tate for its intended purpose—cleaning toilet bowls. In rejecting this argument, the Court of Appeals defined "misuse" in the following manner:

Misuse is all possible types of product use, or conduct affecting product use, by the plaintiff or a third party which is improper in light of the qualities and characteristics of the product itself.

*Uptain*, 685 P.2d at 221 (citing Weinberger, *Product Misuse in New York State*, 53 N.Y.Bar J. 363 (1981)). The plaintiff contends that this definition of misuse introduces the concept of contributory negligence into this products liability case.

■ Because strict liability claims focus on the product itself rather than on any conduct of the manufacturer, contributory negligence is generally not recognized as a defense to such claims. *See Jackson v. Harsco Corp.*, 673 P.2d 363 (Colo.1983); *Union Supply Co. v. Pust*, 196 Colo. 162, 583 P.2d 276 (1978). However, comment h to section 402A of the Restatement (Second) of Torts (1965) recognizes an exception to this general rule when unforeseeable abnormal handling of an otherwise safe product causes injuries. Comment h provides in pertinent part:

A product is not in a defective condition when it is safe for normal handling and consumption. If the injury results from abnormal handling, as where a bot-

tled beverage is knocked against a radiator to remove the cap, or from abnormal preparation for use, as where too much salt is added to food, or from abnormal consumption, as where a child eats too much candy and is made ill, the seller is not liable. Where, however, he has reason to anticipate that danger may result from a particular use, as where a drug is sold which is safe only in limited doses, he may be required to give adequate warning of the danger ... and a product sold without such warning is in a defective condition.

In *Jackson*, 673 P.2d 363, we recognized this concept of misuse as a defense to a products liability case:

Misuse by an injured party which cannot reasonably be anticipated by the manufacturer can be utilized as a defense in a products liability case by showing that the conduct of the user, and not the alleged defect in a product, actually caused the accident.... Section 402A recognizes a defense for the manufacturer where the user mishandles or misuses a product and thereby creates a dangerous condition.... The usual situation in which the defense may be asserted is where the product is being used in a way other than that which was intended and which could not reasonably have been anticipated by the manufacturer.

*Id.* at 367 (citations omitted).

■ In this case, the trial court instructed the jury as follows concerning Huntington's misuse defense:

A manufacturer of a product is not legally responsible for injuries caused by a product if: (1) the product is used in a manner or for a purpose other than that which was intended and which could not

reasonably have been expected; and (2) such use rather than a defect, if any, in the product caused the plaintiff's claimed injuries.

This instruction parallels Colo. CJI–Civ. 14:22 and is based upon *Jackson*. Contrary to the broad test stated by the Court of Appeals, the defense of misuse in Colorado is a particularized defense requiring that the plaintiff's use of the product be unforeseeable and unintended as well as the cause of injuries. Such limitation on the availability of the defense strikes an appropriate balance between the policy that in strict liability cases the product, not the manufacturer, is on trial and the recognition that abuse of a product should not be encouraged.

Although the Court of Appeals' characterization of the defense of misuse unduly broadens that defense, instruction No. 15, as given to the jury, correctly stated the law of misuse in Colorado.[1] Furthermore, there was sufficient evidence introduced at trial to establish a factual basis for tendering the defense of misuse to the jury. Thus, the conclusion of the Court of Appeals that instruction No. 15 was not erroneous is correct.

■ Misuse, as the jury was instructed, is a question of causation. Regardless of the defective condition, if any, of a manufacturer's product, a manufacturer will not be liable if an unforeseeable misuse of the product caused the injuries. *See Union Supply Co.*, 196 Colo. 162, 583 P.2d 276; Keeton, *Products Liability and Defenses: Intervening Misconduct*, 15 Forum 109 (1979). The plaintiff argues that Huntington was not entitled to any instruction on the defense of misuse because Sani-Tate was being used for its intended purpose.

1. After concluding that jury instruction No. 15 was an appropriate instruction in the case, the Court of Appeals stated:

In the future, however, we believe the instruction should more clearly emphasize the element of foreseeability of a dangerous condition on the part of the manufacturer. Therefore, the phrase "by the manufacturer" should be added after the word "expected" in the above-quoted portion of the instruction.

With this addition, the instruction conforms more closely to the elements of misuse set out in *Jackson v. Harsco, supra*.
*Uptain*, 685 P.2d at 221. Because we find that under the circumstances of the case before us there was no error in the giving of jury instruction No. 15, we deem it inappropriate to determine the general correctness of pattern jury instruction No. 14:22.

However, the concept of misuse includes use of a product in a manner other than that which was intended as well as use for an unintended purpose. The plaintiff's failure to read and heed the warnings printed on the product's label and her act of wringing out the swab with her hand were arguably unforeseeable uses of Sani-Tate in a manner other than that intended.

 The plaintiff argues that her failure to read the warnings printed on the label is foreseeable as a matter of law. The rule is to the contrary. Comment j to section 402A provides that "[w]here warning is given, the seller may reasonably assume that it will be read and heeded." Adoption of the plaintiff's proposed rule would in effect reverse the policies supporting the requirement that manufacturers must provide adequate warnings of known hazards accompanying use of particular products. We reject the plaintiff's position and adopt comment j as the applicable rule in this jurisdiction. The question of whether it was foreseeable that a user of Sani-Tate would wring out a cloth with her bare hands was properly reserved for jury determination in this case. *See Schwartz v. American Honda Motor Co.*, 710 F.2d 378 (7th Cir.1983); *Brownlee v. Louisville Varnish Co.*, 641 F.2d 397 (5th Cir.1981); *Brown v. Sears, Roebuck & Co.*, 136 Ariz. 556, 667 P.2d 750 (Ct.App.1983); *Self v. General Motors Corp.*, 42 Cal.App.3d 1, 116 Cal.Rptr. 575 (1974); *Falkenbury v. Elder Cadillac, Inc.*, 109 Ill.App.3d 11, 64 Ill.Dec. 628, 440 N.E.2d 180 (1982); *Keener v. Dayton Electric Mfg. Co.*, 445 S.W.2d 362 (Mo.1969); *Smialek v. Chrysler Motors Corp.*, 290 Pa.Super. 496, 434 A.2d 1253 (1981). Accordingly, we conclude that instruction No. 15 was a correct statement of the law of misuse in Colorado and that under the circumstances of this case it was proper to tender the issue of misuse for jury determination.

**2.** In response to the plaintiff's argument that *Good v. A.B. Chance Co.*, 39 Colo.App. 70, 565 P.2d 217 (1977), supported the admission of

II

 The plaintiff asserts that the trial court erred in denying her request under CRE 407 to admit Exhibit N, a Sani-Tate label drafted by Huntington prior to September 7, 1979, to show the feasibility of such warning at the time of the plaintiff's use of Sani-Tate. At the time of trial, the label in question had not been approved by the appropriate federal regulating agency and was not on bottles of Sani-Tate then being sold. Although the trial court did not state the reasons for its ruling, it appears from the record as a whole that the trial court was concerned primarily with the fact that the new label was not in use.[2] The Court of Appeals concluded that section 13–21–404, 6 C.R.S. (1985 Supp.), rendered the new label inadmissible. We disagree with this interpretation of the statute, but agree that the trial court did not err in rejecting this evidence.

Section 13–21–404 provides as follows:

In any product liability action, evidence of any scientific advancements in technical or other knowledge or techniques, or in design theory or philosophy, or in manufacturing or testing knowledge, techniques, or processes, or in labeling, warnings of risks or hazards, or instructions for the use of such product, where such advancements were discovered subsequent to the time the product in issue was sold by the manufacturer, shall not be admissible for any purpose other than to show a duty to warn.

As we previously noted, the label used by Huntington at the time of the plaintiff's injuries warned against skin contact, warned of potential chemical burns from contact with the product, and advised users to wash the skin area well if external contact should occur. At the time of the events giving rise to the plaintiff's injuries, Huntington had used the same warning label for approximately twelve years. The proposed new label contained all of the prior warnings and, in addition, advised

Exhibit N, the trial court stated: "Except it's not quite the same. If [the new label] were on this new bottle, I would have no hesitancy."

consumers to wear rubber gloves when using the product.

The plaintiff's chemical burns resulted from her contact with the hydrochloric acid contained in Sani-Tate. That a high concentration of hydrochloric acid would cause such injuries, and that the use of rubber gloves guarded against skin contact, were not matters of new "scientific advancements ... discovered subsequent to the time [Sani-Tate] was sold by the manufacturer." During the trial neither party argued that the new label was the result of newly discovered scientific knowledge, and no evidence was introduced to support any such claim. By its plain language, section 13–21–404 is inapplicable to the facts of this case.[3]

The plaintiff next argues that the subsequent label was admissible pursuant to CRE 407. CRE 407, which is identical to FRE 407, provides:

> When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove *negligence or culpable conduct* in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

CRE 407 (emphasis added). The plaintiff argues that the new label was relevant to show the feasibility of using such a label prior to the time of the plaintiff's use of Sani-Tate. We disagree.

Although both parties apparently assume that CRE 407 applies to products liability cases, we have not heretofore decided that threshold issue. Courts are divided over the question of whether the prohibition of the admission of post-event corrective measures established by FRE 407 or similar state evidentiary rules apply to products liability cases. *Compare Fish v. Georgia-*

*Pacific Corp.*, 779 F.2d 836 (2d Cir.1985) (subsequent remedial measures are not admissible in a strict liability action); *DeLuryea v. Winthrop Laboratories*, 697 F.2d 222 (8th Cir.1983); *Grenada Steel Industries, Inc. v. Alabama Oxygen Co.*, 695 F.2d 883 (5th Cir.1983); *Werner v. Upjohn Co.*, 628 F.2d 848 (4th Cir.1980), *cert. denied*, 449 U.S. 1080, 101 S.Ct. 862, 66 L.Ed.2d 804 (1981), *with Herndon v. Seven Bar Flying Service, Inc.*, 716 F.2d 1322 (10th Cir.1983), *cert. denied, sub nom. Piper Aircraft Corp. v. Seven Bar Flying Service*, 466 U.S. 958, 104 S.Ct. 2170, 80 L.Ed.2d 553 (1984) (subsequent remedial measures are admissible in a strict liability action); *Unterburger v. Snow Co.*, 630 F.2d 599 (8th Cir.1980); *Ault v. International Harvester Co.*, 13 Cal.3d 113, 117 Cal.Rptr. 812, 528 P.2d 1148 (1974); *Burke v. Illinois Power Co.*, 57 Ill.App.3d 498, 15 Ill.Dec. 670, 373 N.E.2d 1354 (1978); *Barry v. Manglass*, 55 A.D.2d 1, 389 N.Y.S.2d 870 (1976). The majority of courts that have considered the issue have concluded that the federal rule was initially developed because of two concerns: (1) that in negligence cases, wherein questions of lack of reasonable conduct and duty were essential elements, such evidence was irrelevant; and (2) that a contrary rule would, as a matter of policy, discourage alterations in products that, if made, would prevent further injuries. Many decisions holding FRE 407 inapplicable to products liability cases simply conclude that products liability cases can never be equated to "fault" cases. This approach ignores the reality that the concepts of strict liability and negligence liability are often intertwined in duty to warn cases.

In *DeLuryea v. Winthrop Laboratories*, 697 F.2d 222, the Eighth Circuit Court of Appeals refused to make any such categorical distinction and, instead, considered the applicability of FRE 407 in terms of the nature of the particular issues and allegations of the particular lawsuit. In *DeLu-*

---

3. Because we disapprove the Court of Appeals' determination that section 13–21–404 barred the admission of Exhibit N, we need not decide whether "to show a duty to warn" applies to cases where only adequacy of the warning, not the duty to warn, is at issue.

*ryea* a claim of inadequate warning was deemed to involve primarily a question of whether the manufacturer conducted itself reasonably in communicating arguably known information about risks associated with the product, "Talwin," a pain-killing drug. Although affirming earlier Eighth Circuit decisions holding that Rule 407 does not apply in most strict liability cases, the *DeLuryea* court concluded that insofar as the allegation of inadequate warnings was concerned, Rule 407 was applicable.

The *DeLuryea* distinction applies to the circumstances of this case. Sani-Tate can be deemed defective only if the warnings were not adequate. The test of adequacy includes a comparison of the conduct of the defendant to the conduct of a hypothetical "reasonable" entity in the defendant's position at the time. Because this claim requires proof that the defendant's conduct fell short of some objectively ascertainable minimal standard, any liability will be based on "fault" in the traditional tort sense of failure to exercise reasonable care in circumstances wherein one has a duty to exercise reasonable care. We thus conclude that, in the circumstances of this case, CRE 407 is applicable.

█ CRE 407 contains the following exceptions:

> This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

The feasibility exception does not apply to cases wherein the defendant does not contest the feasibility of precautionary measures at the time of the incident. *See, e.g., Herndon v. Seven Bar Flying Service, Inc.,* 716 F.2d 1322. Whether it is applicable in a particular case requires consideration of the legal and factual context of the case.

4. Whether the defendant's definition of feasibility—the practical ability of putting the new label on the bottle—is the definition of feasibility in the context of a duty to warn case is unnecessary to our resolution of this issue. The

█ Here, in response to the trial court's inquiry as to whether the feasibility of the new label was controverted, the following colloquy occurred:

> [DEFENDANT'S ATTORNEY]: I don't see how a label can be called feasible when you can't use it because the government won't let you use it, and this label was, in fact, produced in 1978, they are still trying to get the government to let them use it.
>
> [PLAINTIFF'S ATTORNEY]: Well, they could have gotten the government's permission back in 1955, they could have gotten it in 1960. That's an E.P.A. label on that bottle right now that Tonya Uptain used. I mean, the mere fact that they dillydally around in 1978 to apply for a proper label on their product and then come into court and say it's not feasible—feasibility talks about the ability to design and put a label on the bottle.
>
> [DEFENDANT'S ATTORNEY]: Which they don't have.
>
> [PLAINTIFF'S ATTORNEY]: If they applied for that permission back when they should have, that label would have been on this bottle ten years before this accident ever occurred....

Tr. at 31. It is thus apparent that Huntington controverted the feasibility of the new label.[4] Therefore, CRE 407 does not require the exclusion of evidence of the new label.

█ In this case, however, the new label was submitted to the EPA for approval in 1978, one year prior to the date of the plaintiff's injuries. Thus, the new label cannot be deemed a "subsequent" remedial measure. CRE 407 is expressly limited to measures taken "after an event." The mere act of submitting a new Sani-Tate label to the EPA for approval would not have made the plaintiff's injuries less likely to occur. Therefore, CRE 407 is not applicable to the plaintiff's Exhibit N, which

defendant's belief that feasibility was controverted suffices for purposes of determining the threshold applicability of the feasibility exception to CRE 407.

was not, even at the time of trial, a measure taken which would have made the plaintiff's injuries less likely to occur.

■ Because neither CRE 407 nor section 13–21–404 is applicable to the question of the admissibility of Exhibit N, we must turn to general guidelines of evidence admissibility. It is axiomatic that trial courts have broad discretion as to the admissibility of evidence. *See KN Energy, Inc. v. Great Western Sugar Co.*, 698 P.2d 769 (Colo.1985), *cert. denied*, —— U.S. ——, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985); *People v. Schwartz*, 678 P.2d 1000 (Colo.1984). Although the record transmitted to this court does not include the trial court's reasons for excluding the evidence of the label, the record supports the conclusion that the prejudicial effect of such evidence far outweighed its probative value. CRE 403. Considering the trial court's concern with the fact that the new label was not yet in use and the plaintiff's arguments that the new label would establish the defect in the old warning label, it is likely that the trial court based its ruling on this factor. In any event, the plaintiff has failed to establish that the exclusion of Exhibit N was an abuse of the trial court's broad discretion in evidentiary matters. *See People v. Lowe*, 660 P.2d 1261 (Colo.1983). Accordingly, although we reject the conclusion of the Court of Appeals that Exhibit N was inadmissible because of section 13–21–404, we affirm the trial court's decision to exclude that exhibit from the evidence.

### III

The plaintiff finally argues that the Court of Appeals erred in concluding that because the plaintiff failed to object contemporaneously to the introduction of certain defense evidence, her pretrial objection to the introduction of that evidence by means of a motion in limine was lost for purposes of appeal. We agree, but conclude that the trial court did not err in admitting the evidence.

Anticipating that Huntington would seek to introduce evidence that it had never been sued for personal injuries resulting from the use of Sani-Tate, the plaintiff filed a motion in limine prior to trial to prevent the introduction of such evidence. After a hearing, the trial court concluded that the evidence was admissible and denied the motion.[5] At the time Huntington elicited testimony on the subject, the plaintiff did not object.

CRE 103(a)(1) provides:

Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

(1) **Objection.** In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context....

The question is whether a motion in limine constitutes a "timely objection" for purposes of CRE 103(a)(1). A survey of those jurisdictions which have considered the issue reveals a split of authority.[6]

---

**5.** The record on appeal includes only the trial court's summary ruling on the motion in limine and the reargument of the parties. The parties' original arguments were not transcribed.

**6.** *Compare Rojas v. Richardson*, 703 F.2d 186 (5th Cir.1983) (motion in limine does not preserve error for appeal); *Northwestern Flyers, Inc. v. Olson Bro. Mfg. Co.*, 679 F.2d 1264 (8th Cir.1982); *Collins v. Wayne Corp.*, 621 F.2d 777 (5th Cir.1980); *United States v. Helina*, 549 F.2d 713 (9th Cir.1977); *People v. Stewart*, 140 Cal. App.3d 11, 189 Cal.Rptr. 141 (1983); *Douglas v. Lombardino*, 236 Kan. 471, 693 P.2d 1138 (1985); *Maricle v. Spiegel*, 213 Neb. 223, 329 N.W.2d 80 (1983); *State v. Leslie*, 14 Ohio App.3d 343, 471 N.E.2d 503 (1984); *Zehner v. Post Oak Oil Co.*, 640 P.2d 991 (Okla.App.1981); *Dailey v. Wheat*, 681 S.W.2d 747 (Tex.App.1984); *State v. Lesley*, 672 P.2d 79 (Utah 1983); *with American Home Assurance Co. v. Sunshine Supermarket, Inc.*, 753 F.2d 321 (3d Cir.1985) (motion in limine preserves error for appeal); *Sheehy v. Southern Pacific Transportation Co.*, 631 F.2d 649 (9th Cir.1980); *Reyes v. Missouri Pacific Railroad Co.*, 589 F.2d 791 (5th Cir.1979); *United States v. Williams*, 561 F.2d 859 (D.C.Cir. 1977); *Loof v. Sanders*, 686 P.2d 1205 (Alaska 1984); *State v. Lujan*, 136 Ariz. 326, 666 P.2d 71 (1983); *Harley-Davidson Motor Co. v. Daniel*, 244 Ga. 284, 260 S.E.2d 20 (1979); *State v.*

Although the Colorado Rules of Evidence do not expressly authorize motions in limine, the Court of Appeals in *Good v. A.B. Chance Co.*, 39 Colo.App. 70, 565 P.2d 217 (1977), noted that a trial court's authority to rule on motions in limine is based on the trial court's inherent authority to pass on questions of evidence admissibility and is reflected in the Colorado Rules of Civil Procedure.[7] The court suggested that the purposes served by motions in limine were comparable to the purposes furthered by pretrial conferences, as authorized by C.R.C.P. 16(a)(8):[8] to shorten trial time, to simplify the issues and to reduce the possibility of mistrial. In *Albright v. District Court*, 150 Colo. 487, 375 P.2d 685 (1962), we noted that for purposes of appeal approval of a pretrial order by a party did not effect a waiver of that party's objections to the trial court's pretrial rulings. We held:

> The purpose of the pre-trial conference is to narrow the issues and to simplify the actual conduct of the trial on the merits. Objections duly made at time of pre-trial have the same purpose and effect as objections made at time of trial.

*Id.* at 491, 375 P.2d at 687.

We find no meaningful distinction between the effect of a pretrial ruling on a specific objection to the admissibility of particular evidence made as a result of a pretrial conference and a similar pretrial ruling resulting from a motion in limine insofar as the non-prevailing party's right to have that ruling reviewed on appeal is concerned. Presentation of issues by means of motions in limine offers opportunities to expedite trials, eliminate bench conferences, avoid juror annoyance and permit more accurate rulings. In *Higgs v. District Court*, 713 P.2d 840 (Colo.1985), we held that where the pretrial motion in limine was directed to a broad array of evidence, such motion in limine did not constitute a timely objection for purposes of CRE 103(a)(1). However, the circumstances in the present case, where the motion in limine contained specific objections to the admission of specific items of anticipated evidence, differ markedly from those in *Higgs*. When, as here, a specific evidentiary issue is presented to the trial court in advance of trial, the primary purposes of the contemporaneous objection rule—to permit the trial court to accurately evaluate the legal issues and to enable the appellate court to apprehend the basis of the objection—are satisfied. Requiring an additional formal objection and ruling in all cases would undermine the benefits provided by the motion in limine procedure. We conclude that under the circumstances of this case, where the issue of the admissibility of the specific evidence was fully ar-

---

*Foster*, 296 Or. 174, 674 P.2d 587 (1983); *State v. Kelly*, 102 Wash.2d 188, 685 P.2d 564 (1984).

In Wyoming, the Committee Note to Wyo. R.Ev. 103 states that objection at trial to evidence ruled admissible on a motion in limine is not necessary to preserve the issue for appeal. The Ninth Circuit in *Burgess v. Premier Corp.*, 727 F.2d 826 (9th Cir.1984), noted that it was not clear whether a motion in limine was sufficient to preserve error for appeal absent a contemporaneous objection. The Second Circuit observed that the reasons for strict application of Rule 103 to a failure to object are less compelling where the court has made a pretrial ruling that the evidence will be admissible. *Robinson v. Shapiro*, 646 F.2d 734 (2d Cir.1981). In *United States v. Guerrero*, 650 F.2d 728 (5th Cir.1981), the court noted that although a motion in limine would preserve error for appeal in some circumstances, an objection to evidence at trial based on different grounds than those argued on the motion in limine did not preserve the motion in limine objections for appeal.

7. FRE 103(c) has also been suggested as a basis for motions in limine. 21 Wright & Graham, *Federal Practice and Procedure* § 5037 at 194 (1977). CRE 103(c), which is identical to FRE 103(c), provides:

> In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury.

8. C.R.C.P. 16(a)(8) provides:

> In every action in which a contested trial is to be held, the court may in its discretion direct the attorneys for the parties to appear before it for a conference:
>
> . . . .
>
> To consider any other matters that will simplify the issues and further aid in the disposition of the controversy.

gued to the trial court on the same grounds argued by the non-prevailing party on appeal, the plaintiff's motion in limine constituted a timely objection for purposes of CRE 103(a)(1).[9] The Court of Appeals' contrary conclusion is erroneous.

Although the selective transcript of the pretrial proceedings provided on appeal does not indicate the trial court's reasons for admitting the evidence, the record does reveal that Huntington relied upon section 13–21–403(3), 6 C.R.S. (1985 Supp.), to support its position that evidence of no prior claims against its product was admissible. Section 13–21–403(3) provides as follows:

> Ten years after a product is first sold for use or consumption, it shall be rebuttably presumed that the product was not defective and that the manufacturer or seller thereof was not negligent and that all warnings and instructions were proper and adequate.

 Implicit in this statutory language is the assumption that no other strict liability claims have been established against the particular product.[10] The evidence in this case established that Sani-Tate had been marketed for twenty-five years in its present form and that no suit had been filed against the product or against Hunt-

ington with respect to the product. This evidence was relevant to the question of whether Huntington was entitled to an instruction informing the jury of the presumption created by section 13–21–403(3) and, therefore, was properly admitted by the trial court.[11]

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

QUINN, C.J., dissents.

DUBOFSKY, J., does not participate.

QUINN, Chief Justice, dissenting:

I respectfully dissent.

### I.

While I agree with the conclusion in Part I of the court's opinion that the court of appeals' definition of misuse unduly broadens that affirmative defense, I disagree with the strong implication in the court's opinion that a failure to read and follow a warning on a product will always support a jury instruction on misuse. I also disagree with the court's conclusion that the trial court adequately instructed the jury on misuse in this case. In my view, the trial court's instruction on misuse erroneously permitted the jury to find for the defendant

---

9. We do not suggest that a contemporaneous objection is never necessary to preserve an evidentiary question for appellate review. For example, a party might find at trial that a ground different from the grounds articulated in a preliminary motion in limine is appropriate to interpose at the time the evidence is offered. A failure to request the trial court to consider this new basis for objection to the evidence would in all probability result in the loss of any right to appellate review of the validity of the new basis for opposing admission of the evidence.

10. Statutory presumptions in civil cases generally arise where there is a rational connection between the proved fact and the presumed fact. *See generally McCormick on Evidence* § 244 (1972). The mere fact that a product has been marketed for ten years or more does not, without more, lead to the natural inference that the product is not defective. However, evidence that a product marketed for more than ten years without any products liability lawsuits having been filed against it is rationally connected to the issue of whether the product is defective under § 402A.

11. The Court of Appeals commented in its opinion that evidence of a lack of prior accidents is generally not admissible, relying upon our decision in *Anderson v. Heron Engineering Co.,* 198 Colo. 391, 604 P.2d 674 (1979). However, in that strict products liability case the defendant introduced evidence of a lack of prior accidents to establish it had no knowledge of the product's defect. Emphasizing that in strict liability cases the focus is on the condition of the product rather than on the reasonableness of the manufacturer's conduct, we concluded that the proffered evidence was not relevant to prove knowledge because "the defendant's knowledge of a defect that renders a product unreasonably dangerous is assumed in strict liability cases." *Id.* at 398, 604 P.2d at 679. *Anderson* is distinguishable from the present case, where Huntington sought to introduce the evidence of lack of prior accidents to show the defect-free nature of Sani-Tate—an essential issue in the case. The broad statement that evidence of lack of prior accidents is not generally admissible is subject to the qualification here noted.

even if the warning on the cleaning compound was not adequate to inform a user of the consequences of failing to follow the instructions regarding proper use of the product.

## A.

The majority reasons that "the concept of misuse includes the use of a product in a manner other than that which was intended as well as use for an unintended purpose"; that regardless of the defective condition of a manufacturer's product, the manufacturer "will not be liable if an unforeseeable misuse of the product causes the injuries"; and that in this case the plaintiff's failure to read and heed the warning printed on the product's label and the plaintiff's act of wringing out the swab with her hand "were arguably unforeseeable uses of Sani-Tate in a manner other than that intended" and thus could support a jury instruction on misuse. Majority opinion at 1325–26. I believe the majority, at least by implication, automatically and unnecessarily extends the defense of misuse to all cases involving a failure to read and follow warnings on a product regardless of the adequacy of the warning itself.

In order for a plaintiff to recover on a strict liability claim "[s]he must show that the product was defective, that the defect was attributable to the defendant, and [that] the defect caused the injury complained of." W. Kimble & R. Lesher, *Products Liability* § 241 (1979); *see also* CJI-Civ.2d 14:18. A defendant manufacturer is entitled to defend a strict liability claim by asserting the defense of misuse—that is, that the plaintiff used the product "in a way other than that which was intended and which could not reasonably have been anticipated by the manufacturer," and that such misuse, and not the defect in the product, actually caused the injury to the plaintiff. *Jackson v. Harsco Corp.*, 673 P.2d 363, 367 (Colo.1983). The defense of misuse operates as an affirmative defense in that, even if the jury finds the product defective, the defendant may prevail if the jury finds that the plaintiff used the product for a purpose or in a manner neither intended nor reasonably foreseeable by the manufacturer. *Jackson*, 673 P.2d at 367; *Nelson v. Hydraulic Press Manufacturing Co.*, 84 Ill.App.3d 41, 39 Ill.Dec. 422, 404 N.E.2d 1013 (1980); *see also Products Liability* § 244, at 270.

When the warning accompanying a product is indeed adequate, I agree that a manufacturer may reasonably assume that users will read and heed the warning, *Restatement (Second) of Torts* § 402A comment j (1965), with the result that a user's failure to follow an *adequate* warning cannot serve, by itself, as a basis for imputing a defect in a product that is otherwise not defective in its manufacture and design. When, however, the warning does not adequately alert a user to dangers likely to arise from improper use, it strains logic to conclude that the failure of a user to follow such an inadequate warning should give rise to the defense of misuse.

A product not otherwise defective in its manufacture and design may nonetheless be in a defective condition unreasonably dangerous to the user due to the failure of the manufacturer to give an adequate warning regarding the use of the product. A warning must be adequate both as to its form and content. A manufacturer must appropriately label a product, giving proper consideration to the likelihood of injury due to the failure to warn of dangers that are both inherent in the use of the product and that are likely to arise from improper handling of the product. *Crane v. Sears, Roebuck & Co.*, 218 Cal.App.2d 855, 32 Cal.Rptr. 754 (1963). Although a product may be safe so long as instructions for use are followed, there may nevertheless be dangers that are not obvious to the user and that may arise if directions are not strictly followed. Determination of the manufacturer's liability in these instances should turn on whether "it was reasonably foreseeable that the user would fail to read directions or fail to follow them, in the absence of a warning as to consequences of such misuse." *Brown v. Sears, Roebuck & Co.*, 136 Ariz. 556, 667 P.2d 750, 758 (Ct.App.1983) (quoting *Products Liability* § 199, at 210–11). We rec-

ognized as much in *Hiigel v. General Motors Corp.*, 190 Colo. 57, 64, 544 P.2d 983, 988 (1976), when we stated that "the duty to warn may not be satisfied by directions which merely tell how to use the product, but say nothing about the inherent and specific dangers if directions are not followed." [1]

If the only defect at issue is the failure to adequately warn of the consequences of foreseeable misuse, the manufacturer should not be entitled to a jury instruction on the defense of misuse because, as previously noted, the defense of misuse applies only to a misuse that could not have been reasonably anticipated by a manufacturer. *Jackson*, 673 P.2d at 367. If in such a case the jury were to find that the warning on foreseeable misuse was adequate, the suit should end in the defendant's favor on the basis that the product was not defective. If, on the other hand, the jury were to find that the warning regarding foreseeable misuse was inadequate, the manufacturer should not be able to assert as a defense that such foreseeable misuse indeed occurred. For example, a warning buried in fine print in the middle of a lengthy instruction booklet might render a product defective by reason of the failure to provide a warning reasonably calculated to catch the attention of the prudent consumer as to the consequences of not strictly following the instruction on proper use. Since misuse does not operate as a defense

unless the product is being used in a manner neither intended nor reasonably foreseeable by the manufacturer, the manufacturer should not be entitled to an instruction on misuse based on the user's failure to read a warning which the manufacturer could reasonably expect would not be noticed by the prudent consumer. Likewise, when a warning is ambiguous and the user fails to follow it in a way that the manufacturer intended but did not adequately express, the use of the product contrary to the manufacturer's unexpressed intent should not give rise to the defense of misuse.

### B.

In this case, the only defect at issue was the alleged failure of Huntington Lab, Inc., to provide an adequate warning regarding the use of its product. The trial court instructed the jury on this issue as follows:

In order for the plaintiff, Tonya Uptain, to recover from the defendant, Huntington Lab, Inc., on her claim for damages, you must find all of the following to have been proved:

1. the instructions for use, and the warnings of dangers associated with that use, which accompanied Sani-Tate were inadequate;

2. the inadequate instructions and warnings rendered Sani-Tate unreasonably dangerous when it was used for its intended purpose. To be unreasonably

---

1. CJI–Civ.2d 14:20 states:

(A product is) (A product not otherwise defective in its manufacture or design becomes) defective and unreasonably dangerous if it is not accompanied by sufficient (warnings) (or) (instructions for use). To be sufficient, such (warnings) (or) (instructions for use) must adequately inform the ordinary user of any specific risk of harm which may be involved in (any intended or reasonably expected use) (or) (any failure to properly follow instructions when using the product for any intended or reasonably expected use).

The Notes on Use to this instruction provide as follows:

This instruction should be given whenever one or more of the claimed defects involves the lack or adequacy of warnings or instructions for the use of the product. The first parenthetical clause in the first sentence

should be used when the *only* defect claimed in the product is the inadequacy of warnings or instructions. The second parenthetical clause should be used when the claimed defect also involves, or another claimed defect involves, manufacture or design. See Notes on Use to Instruction 14:19.

Use whichever other parenthesized words are appropriate. In certain cases this instruction may need to be modified to make it clear that the adequacy of warnings or instructions are to be tested in terms of the persons or groups of persons to whom such warnings and instructions are normally expected to be addressed. For example, warnings dealing with the side effects of prescription drugs will normally be addressed to physicians and pharmacists, rather than to the ultimate consumer. *See, e.g., Hamilton v. Hardy*, 37 Colo. App. 375, 549 P.2d 1099 (1976).

dangerous, Sani-Tate, because of inadequate instructions and warnings, must have created a risk of harm to persons which would not ordinarily be expected;

3. the plaintiff's injuries were proximately caused by this unreasonably dangerous condition.

If you find that one or more of these propositions has not been proved by a preponderance of the evidence, then your verdict must be for the defendant.

On the other hand, if you find that all of these propositions have been proved by a preponderance of the evidence, then your verdict must be for the plaintiff, unless you find plaintiff misused the product as defined in another instruction.

The court then, over the plaintiff's objection, instructed the jury on misuse as follows:

A manufacturer of a product is not legally responsible for injuries caused by a product if: (1) the product is used in a manner or for a purpose other than that which was intended and which could not reasonably have been expected; and (2) such use rather than a defect, if any, in the product caused the plaintiff's claimed injuries.

These instructions permitted the jury to improperly apply the misuse instruction to a situation clearly outside the intended scope of the misuse defense. In effect, the jury was allowed to return a verdict for the defendant on the basis of the misuse instruction even though the jury may have already determined that the product was defective due to an inadequate warning in regard to the consequences of foreseeable misuse and that this defect was the proximate cause of the plaintiff's injuries. This instructional flaw warrants a new trial.

## II.

I also dissent from Part II of the court's opinion, which holds that the trial court properly excluded evidence of the new Sani-Tate label because the prejudicial effect of such evidence outweighed its probative value. The plaintiff's strict liability claim was predicated on the manufacturer's failure to warn users of the dangers associated with the use of Sani-Tate cleaning fluid. In Colorado, a manufacturer's duty is to *adequately* warn users of the proper way of using the product and the dangers associated with normal use and reasonably foreseeable misuse. *See Jackson*, 673 P.2d at 367. Section 13–21–404, 6 C.R.S. (1985 Supp.), expressly provides that "evidence of any scientific advancements ... in labeling, warnings of risks or hazards, or instructions for the use of such product, where such advancements were discovered subsequent to the time the product in issue was sold by the manufacturer, shall not be admissible for any purpose *other than to show a duty to warn.*" (emphasis added). The court finds this statute inapplicable because, in its view, the new label advising users to wear rubber gloves was not the result of "newly discovered scientific knowledge." Majority opinion at 1327. Even if evidence of a new label cannot properly be categorized as "newly discovered scientific knowledge," such evidence is not inadmissible as long as it is otherwise legally relevant to show a duty to warn. The plaintiff's proferred evidence of the new Sani-Tate label clearly qualified for admission under the applicable standards of legal relevancy.

### A.

Although not necessary to a resolution of this case, the court determines that the exclusionary provision of CRE 407 applies equally to a strict liability claim as it does to a negligence claim. Rule 407 provides, in pertinent part, that "evidence of the subsequent [remedial] measures is not admissible to prove negligence or culpable conduct in connection with the event," but exclusion is not required when this evidence is offered for some other purpose, such as proving the feasibility of precautionary measures, if controverted. The intent underlying CRE 407, and its identical federal counterpart, is that the exclusion of evidence of subsequent remedial measures should only apply in cases involving negligence or culpable conduct and not to a claim predicated on strict liability. This

intent is evidenced by the Evidence Committee's comment to Rule 407, which states that "[t]he phrase 'culpable conduct' is not deemed to include proof of liability in a 'strict liability' case based on defect, where the subsequent measures are properly admitted as evidence of the original defect."

The rationale for not applying Rule 407 in strict liability cases has been cogently analyzed in *Herndon v. Seven Bar Flying Service, Inc.*, 716 F.2d 1322 (10th Cir.1983), and *Ault v. International Harvester Co.*, 13 Cal.3d 113, 117 Cal.Rptr. 812, 528 P.2d 1148 (1974). A strict liability claim for a product defect focuses on the product itself, not the culpability of the manufacturer, and the policies undergirding strict liability would be seriously impaired by extending a negligence-based rule of evidence to these claims. Furthermore, it is utter speculation, and unreasonable speculation at that, to suppose that manufacturers would risk innumerable lawsuits by foregoing improved warnings as to use or other improvements in their products in order to avoid the possible use of such evidence in subsequent litigation. Moreover, the fact that the alleged defect is an inadequate warning does not change the nature of the claim from one of strict liability to one based on culpable fault. I would therefore not apply the exclusionary provisions of CRE 407 to a strict liability claim.

### B.

The appropriate standards for determining the admissibility of the new label are found in CRE 401 and 403. CRE 401 defines relevant evidence as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable ... than it would be without the evidence." CRE 401. The evidence in question, consisting of a new label advising users of Sani-Tate to wear rubber gloves when using the product, is obviously relevant to the basic issue in this case—that is, whether the manufacturer satisfied its duty to adequately warn users of the proper way of using the prod-

uct and the dangers associated with normal and reasonably foreseeable misuse.

The question remains whether this relevant evidence was properly excluded under CRE 403 because its probative value was substantially outweighed by the danger of unfair prejudice. Since CRE 403 permits the trial court to exclude otherwise relevant evidence, it should be applied sparingly. *United States v. Meester*, 762 F.2d 867, 874–76, *reh'g denied en banc*, 768 F.2d 1353 (11th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 579, 88 L.Ed.2d 562 (1985); *Ebanks v. Great Lakes Dredge & Dock Co.*, 688 F.2d 716, 722–23, *reh'g denied*, 693 F.2d 135 (11th Cir.1982), *cert. denied*, 460 U.S. 1083, 103 S.Ct. 1774, 76 L.Ed.2d 346 (1983); *see also* 2 D. Louisell & C. Mueller, *Federal Evidence* § 125 (1985). The only prejudice attached to the evidence concerning the new label, in my view, is that it may be indicative of liability on the part of the manufacturer—that is, it may show the product was not adequately labelled. However, Rule 403 only requires exclusion of relevant evidence when that evidence is outweighed by the danger of *unfair* prejudice. It "does not protect against evidence that is prejudicial merely in the sense that it is detrimental to a party's case." *United States v. Michaels*, 726 F.2d 1307, 1315 (8th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984). Virtually all evidence is prejudicial in that sense, but not in the "unfair" sense contemplated by CRE 403. *Kelsay v. Consolidated Rail Corp.*, 749 F.2d 437, 443 (7th Cir.1984). There is no question in my mind that the proffered evidence was both logically and legally relevant to the issue of the manufacturer's duty to warn and should have been admitted for that limited purpose with an appropriate limiting instruction given to the jury.

### III.

Finally, I disagree with the court's conclusion in Part III that under CRE 103(a)(1) the plaintiff's motion *in limine* constituted a timely objection to the defendant's proffered evidence of lack of prior lawsuits

involving the use of Sani-Tate, thereby dispensing with the need for the plaintiff to make a contemporaneous objection to such evidence during the trial of the case. The factors bearing on admissibility of a particular item of evidence, particularly its logical and legal relevancy, can best be evaluated in the context of the evidentiary state of the record at trial rather than in the artificial atmosphere of a motion *in limine*. *Higgs v. District Court*, 713 P.2d 840, 859 (Colo.1985). For this reason, the denial of a motion *in limine* should not eliminate the requirement of a contemporaneous objection to the evidence when such evidence is offered at trial. While the contemporaneous objection need not recite in detail the specific objections outlined in the motion *in limine*, and may be made outside the presence or hearing of the jury, the objection should at least incorporate by reference all or part of the objections previously urged and add any new objections to the challenged evidence that the objecting party desires to make. Only in this way can trial and appellate courts be certain that the objecting party, for reasons of trial strategy or otherwise, was not abandoning the objections raised at a pretrial motion *in limine*. The plaintiff, in my view, waived any objection to the evidence in question by not making a contemporaneous objection during trial when the evidence was offered in the defendant's case.

Because the court proceeds to address the merits of the plaintiff's evidentiary claim, I voice my disagreement with the court's construction and application of section 13–21–403(3), 6 C.R.S. (1985 Supp.), in a manner that supports the admission of the challenged evidence. Section 13–21–403(3) states:

Ten years after a product is first sold for use or consumption, it shall be rebuttably presumed that the product was not defective and that the manufacturer or seller thereof was not negligent and that all warnings and instructions were proper and adequate.

To be sure, the legislature has the power to enact a statute declaring that proof of one fact shall give rise to a presumption that another fact is true. *Mobile, Jackson and Kansas City Railroad Co. v. Turnipseed*, 219 U.S. 35, 42, 31 S.Ct. 136, 137, 55 L.Ed. 78 (1910). To comply with basic standards of due process, however, the statutory presumption must be based on "some rational connection between the fact proved and the ultimate fact presumed, and the inference of one fact from proof of another [must] not be so unreasonable as to be a purely arbitrary mandate." *Id.* at 43, 31 S.Ct. at 138. Simply put, "[l]egislative fiat may not take the place of fact in the judicial determination of issues involving life, liberty or property." *Western and Atlantic Railroad v. Henderson*, 279 U.S. 639, 642, 49 S.Ct. 445, 447, 73 L.Ed. 884 (1929).

Section 13–21–403(3), on its face and as construed by the majority, does not satisfy these standards. The statute, on its face, creates a presumption that a product is not defective if it has been sold for use or consumption for ten years. If the history of product liability litigation proves anything, it demonstrates that complex issues of causation frequently come to the surface only after the passage of a considerable period of time during which correlations develop concerning the relationship of an ingredient or component of a product to injury or illness. Moreover, the appearance of a defect within ten years after a product is first sold depends on a number of factors other than the mere passage of time, such as, for example, the frequency of use by the average consumer, the nature of the defect, and the conditions necessary to bring the defect to the knowledge of both the professionals dealing with the product and the ordinary consumer. Some defects take much longer than ten years to discover. The drug diethylstilbestrol (DES) is a case in point. This drug caused no immediate injury to many users, but did create problems in users' daughters more than ten years after the initial ingestion of the drug by the user. *See McMahon v. Eli Lilly & Co.*, 774 F.2d 830 (7th Cir.1985); *Sindell v. Abbott Laboratories*, 26 Cal.3d 588, 163 Cal.Rptr. 132, 607 P.2d 924, *cert. denied*, 449 U.S. 912, 101 S.Ct. 285, 66

L.Ed.2d 140 (1980). Similarly, the dangerous propensities of asbestos did not lead to litigation until people exposed to this product developed cancer many years after the initial exposure. *See Odum v. Celotex Corp.*, 764 F.2d 1486 (11th Cir.1985); *Insurance Co. of North America v. Forty-Eight Insulations, Inc.*, 633 F.2d 1212, 1214 n. 1 (6th Cir.1980), *reh'g granted and opinion clarified*, 657 F.2d 814, *cert. denied*, 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981); *Borel v. Fibreboard Paper Products Corp.*, 493 F.2d 1076, 1083 (5th Cir.1973), *cert. denied*, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974).

In an effort to provide some semblance of rationality to the statute, the court reads into it the requirement that during the ten year period there be no lawsuits filed against the manufacturer of the product. Majority opinion at 1331 and n. 10. I fail to understand how this requirement somehow provides a rational nexus between the proved fact of no litigation during a ten year period and the presumed fact of a nondefective product. A manufacturer, for example, might receive numerous complaints about the operation of a product and take no action to enhance its safety, but nonetheless no lawsuit is filed because none of the complaining parties actually sustained injuries. Perhaps more to the point is the evidentiary problem implicit in the court's construction of the statute. If it can be presumed that a product is not defective because no lawsuits were filed during the ten years after the product is first sold, it follows by a parity of reasoning that it also should be presumed that a product is defective when lawsuits have been filed during this ten year period. Such a presumption, however, would turn on its head the traditional rule against presuming liability from the mere filing of a lawsuit. *See City of Aurora v. Weeks*, 152 Colo. 509, 384 P.2d 90 (1963).

I fail to see any rational connection between the lack of litigation during the first ten years of the marketing of the product and the lack of any defect in the product. The admission of evidence concerning the lack of lawsuits involving Sani-Tate was erroneous.

For the above reasons, I would reverse the judgment of the court of appeals and would remand the case for a new trial.