Tonya UPTAIN, Plaintiff-Appellant,

v.

HUNTINGTON LAB, INC.,
Defendant-Appellee.

No. 81CA0687.

Colorado Court of Appeals,
Div. I.

Feb. 16, 1984.

Rehearing Denied March 22, 1984.

Certiorari Granted July 16, 1984.

Alan E. Johnson, Durango, for plaintiff-appellant.

Hamilton, Shand & McLachlan, P.C., Michael E. McLachlan, Durango, for defendant-appellee.

PIERCE, Judge.

In this products liability action, plaintiff, Tonya Uptain (Uptain), sued Huntington Lab, Inc. (Huntington), the manufacturer of Sani-Tate, a cleaning compound. A jury rendered a verdict favoring Huntington. On plaintiff's appeal, we affirm the judgment of the trial court.

Uptain was hired by a hospital as a housekeeper. Neither party claims that the hospital or the supervisor have any liability. On her first day of work, Uptain, who had no experience with industrial strength cleaning compounds, was instructed by her supervisor in the use of various cleaning compounds which were on a housekeeping cart.

The procedure used by Uptain when she first started to work was to pour the Sani-Tate into the toilet bowl and onto a cloth swab, then to scrub the bowl with the swab which was attached to a handle. Then she would flush the bowl, rinse the swab out under running water, shake out the swab over the bowl, and place it in its receptacle on the cart.

During her third day on the job, Uptain became annoyed with the water dripping from the swab and changed the procedure. She would wring the swab out with her bare hand rather than just shaking it over the bowl, to stop it from dripping. After following this procedure several times, she noticed her right hand had become red and small blisters had formed. She washed her hand and showed it to the supervisor. She then put on a protective glove and continued to work. Upon experiencing increased discomfort, she removed the glove and discovered severe chemical burns on her hand.

The front side of the Sani-Tate bottle carries the word "poison" in large red letters on a white background between two skull and cross-bones logos. Beneath the word "poison," again in large letters, is "Danger; keep out of reach of children." Beneath this, in small letters, is stated, "Read carefully additional cautionary and first aid statements on back." On the back, again in smaller letters, is a paragraph labelled "precautions" which reads:

"Danger: Corrosive. Fatal if swallowed. Do not breath vapor or fumes. Produces chemical burns. Do not get in eyes, skin, or on clothing. Contains hydrochloric acid. Do not mix with chlorine type bleaches or other household chemicals."

The next paragraph on the bottle sets forth the antidotes for both internal and external contacts, and the ingredients listing indicates that the compound contains 23% hydrogen chloride (hydrochloric acid).

Uptain admitted that prior to using Sani-Tate she had looked at the label on the bottle and noted the word "Poison" and a skull and cross-bones. Although she did not read any further, she was aware that Sani-Tate was a dangerous product.

### I.

Uptain first complains that Huntington should neither have been allowed to plead the affirmative defense of misuse, nor should the jury have been instructed on this defense.

### A.

Since the briefing and oral argument of this case, the defense of misuse has been upheld. *Jackson v. Harsco Corp.*, 673 P.2d 363 (Colo.1983). In that opinion, the court sanctioned misuse as a defense through the following language:

"Misuse by an injured party which cannot reasonably be anticipated by the manufacturer can be utilized as a defense in a products liability case by showing that the conduct of the user, and not the alleged defect in the product, actually caused the accident. *Kinard v. Coats Co., Inc., supra.* Section 402(A)

recognizes a defense for the manufacturer where the user mishandles or misuses a product and thereby creates a dangerous condition. *Bradford v. Bendix-Westinghouse Automotive Air Brake Co., supra.* The usual situation in which the defense may be asserted is where the product is being used in a way other than that which was intended and which could not reasonably have been anticipated by the manufacturer."

In the case before us, we have a situation involving an unavoidably unsafe product, *see Restatement (Second) of Torts* § 402(A) comment k (1965) or what may be alternatively characterized as a product which, although not defective, could become unreasonably dangerous to market without appropriate warnings. *See General Electric Co. v. Bush*, 88 Nev. 360, 498 P.2d 366 (1972). Under either characterization, however, if a dangerous condition arises from the design or inherent propensities of such product which manifests itself when the product is used in an unintended, but foreseeable, manner, the manufacturer has a duty to warn against the unintended but foreseeable use. *See Gardner v. Q.H.S., Inc.*, 448 F.2d 238 (4th Cir.1971).

Therefore, in such a factual setting, the manufacturer must give adequate directions and warnings. A warning is adequate if, considering the character of the product, one may conclude that it reasonably informs the user of the scope of the danger involved. Whether a manufacturer could have foreseen that a user might not have followed a broad general instruction, and therefore, whether a specific instruction should have been set forth to advise of dangerous conditions arising out of an unintended, but foreseeable use, is generally a question for the jury.

### B.

Uptain, however, further argues that the defense of misuse is inapplicable here because the product was being used for its actual intended purpose, that of

cleaning toilet bowls. This view is far too restrictive of the defense of misuse, and we believe the better view to be that:

> "Misuse is all possible types of product use, or conduct affecting product use, by the plaintiff or a third party which is improper in light of the qualities and characteristics of the product itself." Weinberger, *Product Misuse in New York State,* 53 *N.Y. Bar J.* 363 (1981).

This broader definition covers those situations anticipated by this defense, including unforeseeable disregard of instructions and unforeseeable use without proper safeguards. Therefore, the defense is available in this type of case, and the manufacturer here was entitled to a presumption that where a warning was given, it could reasonably assume that the warning would be read and heeded. *See Parzini v. Center Chemical Co.,* 134 Ga.App. 414, 214 S.E.2d 700 (1975).

With this factor in mind, the jury then had to examine the contents of the warning and its form of display, to determine if the warning was inadequate or whether there was some reason, foreseeable to the manufacturer, why the warning was not heeded by the plaintiff. *See Restatement (Second) of Torts* § 402(A) comment j; *Technical Chemical Co. v. Jacobs,* 480 S.W.2d 602 (Tex.1972).

No error was committed by the trial court in either allowing the defense to be presented here or in instructing the jury on that issue.

### C.

The instruction given to the jury concerning misuse is identical to *Colo. J.I.* 14:22 (2d ed.1980) and reads in pertinent part:

> "A manufacturer of a product is not legally responsible for injuries caused by a product if: (1) the product is used in a manner or for a purpose other than that which was intended and which could not reasonably have been expected ...."

Uptain now asserts the trial court erred when it gave the jury this instruction. We disagree. Contrary to Uptain's contention, we do not find the instruction to be misleading under the facts in this case.

In the future, however, we believe the instruction should more clearly emphasize the element of foreseeability of a dangerous condition on the part of the manufacturer. Therefore, the phrase "by the manufacturer" should be added after the word "expected" in the above-quoted portion of the instruction. With this addition, the instruction conforms more closely to the elements of misuse set out in *Jackson v. Harsco, supra.*

### II.

Uptain also alleges the trial court erred when it refused to admit evidence regarding a new Sani-Tate label. The label in question was a proposed, revised label which had been submitted to, but had not been approved by the Environmental Protection Agency, and which had not been used on Sani-Tate bottles distributed for sale. Uptain sought admission of this label to show the feasibility of giving better warnings and instructions, and also sought to prohibit Huntington from referring to the absence of EPA approval of the new label.

Uptain argues that CRE 407 sanctions evidence which shows subsequent precautionary measures for the purpose of impeachment at trial. The Colorado Rules of Evidence, however, are not applicable if there is a specific statutory provision under a special statutory proceeding in effect which prohibits the admission of evidence. CRE 1101(e); *Brown v. Hansen,* 177 Colo. 39, 493 P.2d 1086 (1972). Such is the case here.

Section 13–21–404, C.R.S. (1983 Cum. Supp.) provides:

> "In any product liability action, evidence of any scientific advancement in ... *labeling, warning of risks or hazards, or instructions for the use of such product, where such advancements were discovered subsequent to the time the product in issue was sold* by the manufacturer, shall not be admissible for any

purpose other than to show a duty to warn."

Here, there was no showing that this new label was devised before the product was sold, nor was the duty to warn an issue. Huntington had conceded that a warning was necessary. The issue for the jury was not duty to warn, but adequacy of warning.

Uptain cites *Good v. A.B. Chance Co.*, 39 Colo.App. 70, 565 P.2d 217 (1977) as authority for the allowance of this testimony. That case, however, was decided on facts which occurred before the above statute was enacted.

### III.

■ Uptain complains that the district court should have allowed testimony regarding experiments conducted by a college professor. We disagree.

The general rule regarding this type of experiment is stated in *Publix Cab Co. v. Colorado National Bank*, 139 Colo. 205, 338 P.2d 702 (1959):

"[E]xperiments of this nature are admissible in evidence if they are made under conditions which are substantially similar to those which were obtained on the occasion of the happening ...."

Here, the professor conducted tests using college students, and after advising them to familiarize themselves with the bottle, he further instructed them to wring out the swab. The object was to prove that users, even if familiar with the bottle, might endanger themselves. Because the experiments did not meet those qualifications set forth in *Publix* the trial court properly exercised its discretion when it excluded this evidence.

### IV.

■ Uptain further complains that Huntington Lab was not entitled to a jury instruction on the presumption of the non-defectiveness of its product. The basis of her objection is that no foundation was laid to show that any provisions of the federal act (7 U.S.C.S. § 135, et seq.) were applicable to the issues in this case so as to bring

§ 13–21–403(1)(b), C.R.S. (1983 Cum.Supp.) into operation.

Section 13–21–403(1)(b), C.R.S., (1983 Cum.Supp.) states:

"In any product liability action, it shall be rebuttably presumed that the product which caused the injury ... was not defective ... if the product: ... (b) Complied with, at the time of sale by the manufacturer, any applicable code, standard, or regulation adopted or promulgated by the United States or by this state, or any agency of the United States or of this state."

Huntington's expert, who was responsible for determining whether the label on Sani-Tate complied with federal and local laws, testified that the label did comply with the federal statute in every regard and that he had a copy of the E.P.A. approval of the label. The expert was not cross-examined on this issue, nor was any evidence presented to rebut his testimony.

Uptain argues that for this testimony to be properly admitted it would have been necessary to put the federal statute into evidence so the jury could determine whether the statute had been complied with. She cites no authority for this proposition other than *Sego v. Mains*, 41 Colo. App. 1, 578 P.2d 1069 (1978). That case concerned an attempt to put an inapplicable statute into evidence. It has no pertinence here.

It is certainly proper, under allowable circumstances, to enter regulations of this type into evidence. *Union Supply Co. v. Pust*, 196 Colo. 162, 583 P.2d 276 (1978). However, the statute makes no specifications as to how such evidence will be presented to the court.

Here, a witness who had established knowledge of the subject presented his opinion. He could have been cross-examined regarding that opinion, and either side could have placed the regulations into evidence either to support or to rebut his opinion.

We rule that the unrebutted testimony of the expert was sufficient to establish the presumption of non-defectiveness in accordance with § 13–21–403(1)(b), C.R.S.

Therefore, both the admission of the evidence and the giving of the instruction on the presumption were proper.

## V.

 Finally, Uptain claims that defense testimony should not have been allowed to the effect that no other claims or lawsuits involving Sani-Tate had been filed. Under the facts of this case, we disagree.

Normally, such evidence is not admissible. *See Anderson v. Heron Engineering Co.,* 198 Colo. 391, 604 P.2d 674 (1979). However, in this case, no contemporaneous objection was made to this testimony. *See Denver v. Hinsey,* 177 Colo. 178, 493 P.2d 348 (1972). Further, Uptain initiated the controversy by cross-examining an employee of the hospital about injuries to another employee who had used Sani-Tate. The door was thus opened to the introduction of this rebuttal testimony. *Kaltenbach v. Julesburg School District RE–1,* 43 Colo. App. 150, 603 P.2d 955 (1979).

The judgment is affirmed.

BERMAN and METZGER, JJ., concur.