Reginald Edwin PETERSON,
Plaintiff-Appellant,

v.

PARKE DAVIS & COMPANY, a foreign corporation,
Defendant-Appellee.

No. 82CA1256.

Colorado Court of Appeals,
Div. II.

March 14, 1985.

As Modified on Denial of Rehearing
May 2, 1985.

Certiorari Denied Sept. 23, 1985.

Johnson, Mahoney & Scott, P.C., Roger F. Johnson, Brian J. Lampert, Denver, for plaintiff-appellant.

Montgomery, Little, Young, Campbell & McGrew, P.C., William H. ReMine, III, Englewood, for defendant-appellee.

VAN CISE, Judge.

Plaintiff, Reginald Edwin Peterson, brought this action to recover for neurological injuries allegedly resulting from excessive doses of a prescription drug, dilantin, an anti-convulsant medication used to control seizures. He claimed malpractice against his psychiatrist, Dr. John F. Mardock, Mardock's professional corporation, and Mount Airy Psychiatric Center, the hospital where he had been a patient, and also sought recovery against defendant Parke Davis & Company (Parke Davis), the manufacturer of the drug. His theories of recovery against Parke Davis were negligence and strict liability for failure to provide adequate warnings. The psychiatrist, the professional corporation, and the hospital settled out of court. The matter proceeded to a jury trial against Parke Davis only. Verdict and judgment were for Parke Davis. Peterson appeals. We affirm.

In the summer of 1977, Peterson, a 17-year-old school boy, had an apparent epileptic seizure. A physician prescribed dilantin. Later, Peterson began to act in a confused manner and was admitted first to

a general hospital and then to Mount Airy Psychiatric Center for observation, where he came under the care of Dr. Mardock.

Mardock continued the administration of dilantin without checking the package insert or the Physician's Desk Reference for information on the drug. Later he changed the mode of administration of the drug from the capsule to the liquid form. Peterson's condition deteriorated. He developed difficulties with walking, speaking, balance, coordination, and mental alertness, as well as problems of falling, dizziness, and unsteadiness. A blood serum level was taken and was found to be at a toxic level. Days later, he was transferred to other hospitals and other doctors and was taken off dilantin. However, he had already incurred brain damage.

At trial, Peterson claimed that Parke Davis was negligent and strictly liable, alleging that the package insert which accompanies dilantin, as well as the Physicians' Desk Reference, did not adequately warn of the possibility of permanent neurological damage from dilantin toxicity if a doctor failed to reduce the dosage. He also argued that the information did not warn that disproportionate increases in serum level could occur when switching from dilantin capsules to the liquid form of the drug.

Parke Davis denied that it had breached its duty to warn in regard to the use of dilantin and alleged that the warnings in the packet and the Physician's Desk Reference were adequate. It asserted that it was Mardock's misuse of the drug which caused Peterson's injuries. There was no dispute that Peterson received a severe overdose of dilantin and that his injuries resulted from the toxic effects of that drug.

### I.

Peterson contends that the trial court erred in allowing Parke Davis to assert the affirmative defense of misuse of its product to insulate from liability. We disagree.

■ Misuse of a product is all possible types of use, or conduct affecting use, by the plaintiff or a third party which is improper in light of the qualities and characteristics of the product itself. *Uptain v. Huntington Lab, Inc.*, 685 P.2d 218 (Colo. App.1984) (cert. granted July 16, 1984). "Misuse ... which cannot reasonably be anticipated by the manufacturer can be utilized as a defense in a products liability case by showing that the conduct of the user [here the attending physician], and not the alleged defect in the product, actually caused the [injury]." *Jackson v. Harsco Corp.*, 673 P.2d 363 (Colo.1983).

■ Misuse by the consumer or a third party creates the dangerous condition. *Bradford v. Bendix-Westinghouse Automotive Air Brake Co.*, 33 Colo.App. 99, 517 P.2d 406 (1973). Where, as here, an attending physician, in prescribing and in supervising the use of a drug, disregards the manufacturer's warnings and instructions, it is that conduct which renders the product unreasonably dangerous, and thus defective, and the adequacy of the warnings and instructions are not relevant. *See Uptain v. Huntington Lab, Inc., supra; Hamilton v. Hardy*, 37 Colo.App. 375, 549 P.2d 1099 (1976).

■ In the instant case, Mardock testified that he had not read the package insert which accompanies dilantin and that he had not consulted the Physician's Desk Reference pertaining to dilantin since 1966. Further, Mardock did not have blood serum tests done on Peterson, even when Peterson showed signs of dilantin toxicity. Parke Davis' warnings on the use of dilantin stated that if toxic effects occurred, the drug dosage should be reduced or discontinued. Therefore, the issue as to whether Mardock had misused the drug in an unforeseeable manner was properly submitted to the jury. *See Uptain, supra.*

### II.

■ Peterson's contention that the court erred in refusing his tendered instructions concerning Parke Davis' duty to warn the entire medical community, and not just the

attending physician as the court instructed, is without merit. Here, the concern was with the warning given to the attending physician, and whether others were warned is irrelevant.

 Similarly, the request for an instruction that Parke Davis had a duty to warn of all known dangers was properly denied. In a failure to warn case, the plaintiff has the burden of proving that the manufacturer gave inadequate warning of the danger which caused the injury. *See Hiigel v. General Motors Corp.*, 190 Colo. 57, 544 P.2d 983 (1975). The jury was so instructed here.

Judgment affirmed.

BERMAN and KELLY, JJ., concur.