**Robbie Sue HICKMAN, Plaintiff,**

v.

**THOMAS C. THOMPSON COMPANY; Thompson Enamel, a Division of Ceramic Coating Company; and Ceramic Coating Company, Defendants.**

Civ. A. No. 83–K–0731.

United States District Court, D. Colorado.

Oct. 7, 1986.

Kenneth N. Kripke, Denver, Colo., for plaintiff.

Mike Hilgers, Arvada, Colo., for Ceramic Coating.

Bonner E. Templeton, Denver, Colo., for Thompson.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This product liability action is brought under a strict liability theory. Jurisdiction lies under 28 U.S.C. § 1332. Trial is cur-

rently scheduled to commence on October 27, 1986. Before me are three motions, filed by the plaintiff, which relate to the impending trial:

I. Robing Room Motion to Strike the Defense of "Misuse";

II. Motion Regarding Evidence of Absence of Prior Similar Claims; and

III. Motion Regarding Inadmissibility of Industrial Bio-Test Laboratories, Inc. Report.

Each motion will be accorded separate consideration.

### I. *Robing Room Motion to Strike Defense of "Misuse"*

■ On December 18, 1985, I denied plaintiff Robbie Sue Hickman's Motion for Partial Summary Judgment regarding the affirmative defense of misuse of product. Plaintiff again raises this issue, this time in the form of a Robing Room[1] Motion to Strike the Defense of "Misuse." Since this issue has already been decided, the doctrine of the law of the case should preclude its reconsideration. However, because of an arguable intervening change in applicable law, the issue merits re-examination.

In my December 18, 1985 Order, I quoted portions of an opinion rendered by the Colorado Court of Appeals in *Uptain v. Huntington Lab, Inc.*, 685 P.2d 218 (Colo.App. 1984). The court of appeals there defined "misuse" quite broadly:

> Misuse is all possible types of product use, or conduct affecting product use, by the plaintiff or a third party which is improper in light of the qualities and characteristics of the product itself.

*Uptain*, 685 P.2d at 221, citing Weinberger, *Product Misuse in New York State*, 53 N.Y.BarJ. 363 (1981).

---

1. The term "Robing Room" appears to derive from traditions of the English common law. It has fallen into disuse in this country, as has the robing room itself. The Right Honorable Lord Denning has aptly observed that "the principles of law laid down by the Judges in the 19th century—however suited to social conditions of the time—are not suited to the social necessities ... of the 20th century." Denning, L., Master of the Rolls, *The Discipline of the Law* (Butterworth & Co. 1979). The same may be said of the dressing room customs developed by my English predecessors on the bench. Since I do not enjoy the social luxury of a robing room, I will consider this motion to be one *in limine,* a recent innovation which is used more often than it should.

More recently, however, the Colorado Supreme Court has stated:

> Contrary to the broad test stated by the Court of Appeals, the defense of misuse in Colorado is a particularized defense requiring that the plaintiff's use of the product be unforeseeable and unintended as well as the cause of injuries.

*Uptain v. Huntington Lab, Inc.,* 723 P.2d 1322, 1325 (Colo.1986).

Given this legal backdrop, as well as some of the defendants' responses to requests for admissions, plaintiff argues that "it has been established that it was anticipated by the manufacturers that consumers would use the products exactly in the way that they were used by the Plaintiff." Robing Room Motion, at 3.

Plaintiff would have me find that since she purchased defendants' products for the purpose of glazing and decorating copper plates, she was "using" those products in accordance with the manufacturers' intentions and foreseeable consequences. Since the "use" to which she put the products was proper, there could have been no misuse. Plaintiff thus employs the word "use" as a noun to describe the *purpose* of her application of the defendants' enamel products.

Defendants, on the other hand, support their claims of misuse by invoking evidence which is suggestive of the *manner* in which plaintiff contracted lead poisoning. Their proferred evidence indicates that plaintiff inadvertently ingested dust particles of lead-containing enamel by such unconscious acts as wiping her lips with dusty hands and inhaling dust particles floating in the air around her work area. *See* Response of Defendant Thomas C. Thompson Company ("TCT") to Plaintiff's Motion to Strike Defense of "Misuse," at 2; Response of Defendant Ceramic Coating Company ("CCC"), at 2. Defendants note that since 1978, their product catalogs have listed lead as an ingredient and have also warned against ingestion or inhalation.[2]

From these observations, defendants conclude that plaintiff disregarded the warnings, and that she therefore misused the product. In essence, defendants adopt the term "use" as a verb, to describe the work process by which plaintiff applied the enamel. Defendants seem willing to admit that plaintiff's *ends* in applying the enamel were foreseeable and intended. Thus the use to which she put the enamel was proper. However, defendants' argument would hold that the plaintiff's *means* constituted an improper "use," or a "misuse," of the enamel.

I find defendants' interpretation of the defense of misuse to be correct under *Uptain*. The supreme court there held that "the concept of misuse includes use of a product in a *manner* other than that which was intended as well as use for an unintended *purpose*." *Id.*, at 1326 (emphasis added). *Accord,* C.J.I.–Civ.2d 14:22 (1980 and 1986 Supplement).

In *Uptain*, the plaintiff injured her hand by regularly wringing out a swab containing Sani-Tate, a twenty-three percent hydrochloric acid solution manufactured by Huntington. Uptain had been using the swab to clean bathroom fixtures, a *purpose* for which Sani-Tate was clearly intended. However, by wringing out the swab with her bare hand because she was annoyed at the fact that water dripped continuously from the swab, Uptain contravened Sani-Tate's label warnings against contact with bare skin.

The supreme court found that her failure "to read and heed the warnings printed on the product's label and her act of wringing out the swab with her hand were arguably unforeseeable uses of Sani-Tate in a manner other than that intended." *Id.*, at 1326. The trial court had, therefore, not erred in instructing the jury on misuse, because "[t]he question of whether it was foreseeable that a user of Sani-Tate would wring out a cloth with her bare hands was

---

**2.** The issue of plaintiff's awareness of, and access to, these catalogs is not explored in these motion papers. Apparently the product container label itself did not have a printed warning until 1982.

properly reserved for jury determination in this case." [3] *Id.*, at 1326.

■ *Uptain*, both on its facts and law, is controlling here. Robbie Sue Hickman used enamel for decorating and firing copper plates, a purpose for which the enamel was clearly intended. However, if she failed to take adequate long-term precautions against inhalation and ingestion of enamel dust, then she may have also failed to comply with catalog warnings. The adequacy of her precautions is a fact question fit for determination at trial. Moreover, in light of the warnings, any failure to take adequate precautions is also an arguably unforeseeable use of the enamel in a manner other than that intended by the manufacturer. This too is a fact question that should be decided at trial. Plaintiff therefore is not entitled to strike the defense of misuse.

■ Two points remain to be emphasized. First, I do not hold that the defendants are entitled to a jury instruction on the misuse defense. The defendants have the burden of proof on this issue, since misuse is obviously not one of the elements of the tort of strict product liability which plaintiff must prove in order to prevail. *See* C.J.I.–Civ.2d 14:18, 14:22, 3:1(2). They must produce sufficient evidence at trial on this defense before a jury instruction will issue. If they fail to do so, plaintiff may renew her motion to strike at that time. At the present time, however, the facts raised in the pleadings before me indicate that a motion to strike is not ripe.

■ Secondly, a distinction must be made between plaintiff's pre–1978 and post–1977 use of the product. The complaint indicates that plaintiff used enamel for approximately ten years, ending in 1982. The first warnings do not appear to have been made until 1978. Plaintiff seems to have used the product for about six years (1972 through and including 1977) without the benefit of any warnings. If so, then defendants' burden of proof on misuse before 1978 would appear to be extremely difficult to surmount. I am not prepared to hold now, given the relatively undeveloped factual record on this motion, that defendants are not entitled to the misuse defense insofar as plaintiff's injuries may be causally linked to her pre–1978 exposure to lead-containing enamel. I simply observe that, given the apparent lack of warnings before 1978,[4] defendants carry a heavier burden on pre–1978 misuse than they do on post–1977 misuse.

## II. *Motion Regarding Evidence of Absence of Prior Similar Claims*

■ Plaintiff seeks an order prohibiting defendants from referring to the absence of prior similar claims.

This issue is likewise controlled by *Uptain*. There, the supreme court held that evidence of no prior claims "was relevant to the question of whether Huntington was entitled to an instruction informing the jury of the presumption created by [C.R.S.] section 13–21–403(3) and, therefore, was properly admitted by the trial court." *Id.*, at 1331.

This holding is determinative of plaintiff's Motion Regarding Evidence of Absence of Prior Similar Claims. The statute in question, § 13–21–403(3), states that

[t]en years after a product is first sold for use or consumption, it shall be rebuttably presumed that the product was not defective and that the manufacturer or seller thereof was not negligent and that

---

**3.** Uptain also argued that "her failure to read the warnings printed on the label is foreseeable as matter of law." *Id.*, at 1196. The supreme court rejected this contention by adopting comment j to section 402A of the Restatement (Second) of Torts, which provides that "[w]here warning is given, the seller may reasonably assume that it will be read and heeded." Thus Robbie Sue Hickman cannot preclude defendants' defense of misuse on the basis that any failure on her part to read and follow a warning was foreseeable to the manufacturer. However, the antecedent question of the adequacy of the warning is a different issue altogether. *See* note 2.

**4.** Again, this is a factual issue that calls for further exploration.

all warnings and instructions were proper and adequate.

Since plaintiff's complaint alleges that the warnings were inadequate, and also that the product was defective and unreasonably dangerous, defendants may attempt to establish the rebuttable presumption of § 13–21–403(3). TCT and CCC may introduce evidence of the absence of prior similar claims for this purpose. I do not now rule on the admissibility of evidence of the absence of prior similar claims for other purposes which may arise at trial.

### III. Motion Regarding Inadmissibility of Industrial Bio-Test Laboratories, Inc. Report

In 1962, Industrial Bio-Test Laboratories, Inc. ("Bio-Test") performed five tests, at defendants' request, on a sample of vitreous enamel. Three of the tests—acute dermal toxicity, skin irritation, and eye irritation—were performed on albino rabbits. The test results were all negative. The remaining two tests, for acute oral toxicity and acute inhalation toxicity, were performed on albino rats. These tests were also negative.

The tests were performed in accordance with the provisions of the Hazardous Substances Act, 15 U.S.C. § 1261 et seq.[5] Upon plaintiff's own motion, this court took judicial notice of the Hazardous Substances Act. See Order of May 8, 1985. Plaintiff seeks an order suppressing evidence of the tests. The same motion was denied without prejudice by this court's Memorandum Opinion and Order of December 18, 1985. Plaintiff therefore renews her motion.

██ Plaintiff contends that the report is inadmissible because it discusses a test for acute toxicity, whereas "the research which led to the report was directed to the question of whether or not the product was *highly* toxic as that term is used in 12 [sic] U.S.C. Sec. 1261(h)(1)." Plaintiff's Renewal of Motion and Brief In Limine Regarding Inadmissibility of Industrial Bio-Test Laboratories, Inc. Report, at 1.

There is no merit to this contention. If, as plaintiff admits, the report was a determination of toxicity under § 1261(h)(1), then the report's use of the term "acute toxicity" in place of "highly toxic" is of no significance here because § 1261(h)(1) defines the term "highly toxic." Thus the report was concerned with the possible "highly toxic" nature of defendants' products. Moreover, the report uses the term "acute" to describe the tests performed, whereas the term "highly toxic" is used to classify the test results. Since the test results are definitive for the purposes of § 1261(h)(1), plaintiff's distinction is simply not operative.

██ Plaintiff's Renewal Motion also states that since the rats and rabbits in the test only received short-term exposure to the enamel, "the tests in no way reveal the effects of a long term exposure and can be of no help to the jury in determining whether or not the products meet the requirements of labeling of a 'toxic' substance as defined in 12 [sic] U.S.C. Sec. 1261(g)." Renewal Motion, at 2.

This argument is similarly unavailing. First, since plaintiff herself requested and obtained judicial notice of the Hazardous Substances Act, § 1261(h)(1) is theoretically in issue as well as § 1261(g). In addition, because § 1261(g) defines "toxic" while § 1261(h)(1) defines "highly toxic," the two statutes are not necessarily mutually exclusive. More importantly, though, any difference between the short-term and long-term effects of exposure is a matter that affects the weight of the report, and not its threshold admissibility. The weight to be attached to the report in the face of its age, its purpose, its subjects, and its methodology is a decision for the jury to make.

The thrust of the defendants' response to plaintiff's motion is that the test results are relevant because they bear on defendants' knowledge of the danger of the prod-

---

5. Plaintiff has erroneously referred the court to 12 U.S.C. § 1261, a repealed section of the National Credit Corporations Act.

uct. Knowledge, in turn, bears on the adequacy of the warning, an issue raised in the complaint.

This argument is supported by comment j to § 402A of the Restatement (Second) of Torts (1965), which states, in applicable part, that "the seller is required to give warning ... if he has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of the presence of the ingredient and the danger." The report is one indicium of the extent of defendants' knowledge of any danger posed by their product. *See Palmer v. A.H. Robins Co., Inc.*, 684 P.2d 187, 198–199 (Colo.1984).

■ Finally, defendants have drawn my attention to C.R.S. § 13–21–403(1)(b). In pertinent part, that provision provides as follows:

In any product liability action, it shall be rebuttably presumed that the product which caused the injury ... was not defective ... if the product:

\*    \*    \*    \*    \*    \*

(b) Complied with, at the time of sale by the manufacturer, any applicable code, standard, or regulation adopted or promulgated by the United States....

Here, the report is evidence of compliance with § 1261(h)(1), an "applicable code" pursuant to the order of judicial notice. It may also be evidence of compliance with § 1261(g). Hence the report may be admissible for the purpose of establishing a rebuttable presumption that the product was not defective. Since the defective and unreasonably dangerous condition of the product is alleged in plaintiff's complaint, the report should not be suppressed.

Although I hold that the report should not be suppressed, I do not now rule on its admissibility at trial. Once the facts have been more fully developed at the trial itself, plaintiff may renew this motion, if she desires, on the strength of Rule 403 of the Federal Rules of Evidence.

WHEREFORE, the court hereby orders that plaintiff's

(1) Robing Room Motion to Strike the Defense of "Misuse" is DENIED without prejudice to renew at trial;

(2) Motion Regarding Evidence of Absence of Prior Similar Claims is DENIED insofar as that evidence is used for the purposes of C.R.S. § 13–21–403(3); and

(3) Motion Regarding Inadmissibility of Industrial Bio-Test Laboratories, Inc. Report is DENIED without prejudice to renew at trial on the basis of Rule 403 of the Federal Rules of Evidence.